# EXHIBIT 1

*Kane County (5) v. United States*,
4:25-cv-59-DN-PK

**Declaration of Ray Bloxham**

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH
CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| **KANE COUNTY (5)**, a Utah political subdivision, and the **STATE OF UTAH**,<br><br>    Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>    Defendant,<br><br>and<br><br>**SOUTHERN UTAH WILDERNESS ALLIANCE**,<br><br>Proposed Defendant-Intervenor. | Case No. 4:25-cv-00059-DN-PK<br><br><br>**DECLARATION OF RAY BLOXHAM**<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

I, **RAY BLOXHAM**, declare as follows:

1. This declaration is filed in support of the Southern Utah Wilderness Alliance's ("SUWA") Motion to Intervene and Memorandum in Support in the above-captioned matter. I have personal knowledge of each of the facts set forth below, and if called upon to do so, could and would testify regarding the following.

2. I am the Field Director for SUWA, where I have worked since 1999.

3. I am also an active member of SUWA and have been since 1999.

4. SUWA, based in Salt Lake City, Utah, has approximately 12,000 members, many of whom reside in Utah. SUWA's mission is the preservation of the outstanding wilderness and

other sensitive public lands across Utah, and the management of these lands in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character through research and public education; supports both administrative and legislative initiatives to permanently protect Utah's wild places within the National Wilderness Preservation System or by other protective designations where appropriate; builds support for such initiatives on both the local and national levels; and provides leadership within the conservation movement through its advocacy for wilderness preservation.

5. SUWA also works to ensure that areas already designated as wilderness, or which are proposed for such designation, are managed appropriately. SUWA seeks to ensure that the wild federal public lands implicated by this case are managed to preserve their natural and cultural values. SUWA also advocates for other protective designations, for example, in resource management plan development or in connection with individual agency decisions regarding specific project proposals.

6. SUWA is an vocal advocate for the protection of federally-managed wilderness-quality lands in Utah and is widely recognized as a leader in the national effort to designate, over eight million acres of Bureau of Land Management ("BLM") land in the state as wilderness through proposed legislation titled "America's Red Rock Wilderness Act," ("ARRWA"),[1] including the lands traversed by or bordered by the Sand Dunes Road. BLM frequently solicits SUWA's input and participation in the land use planning process for a variety of resource decisions, and SUWA actively participates in all levels of BLM's decision-making process regarding the management of public lands.

---

[1] H.R. 2467, S. 1193, 119th Cong. (2025).

7.  SUWA has a particular interest in federally managed wilderness-quality lands and the threats to their wilderness character, including lands affected by the claimed R.S. 2477 right-of-way for the Sand Dunes Road. SUWA's concerns include but are not limited to the impacts of motorized vehicles and roads on lands managed by BLM.

8.  SUWA has provided BLM with detailed photographic and written documentation regarding the impacts of roads and off-road vehicles ("ORVs") on federal public lands throughout the State of Utah, including Kane County, where the Sand Dunes Road is located.

9.  As SUWA's Field Director, I am required to spend considerable time on the ground visiting public lands throughout Utah. In this capacity and on my own time, I have traveled extensively throughout the public lands in Utah, including those at issue in this case.

10. Prior to taking this position, from 1997-98, I surveyed lands managed by the BLM on behalf of SUWA and the Utah Wilderness Coalition ("UWC"), a group of local, regional and national conservation organizations formed to promote the protection of Utah's last remaining wild lands through legislation and advocacy work.

11. My survey and documentation work on BLM lands, together with similar work conducted by other volunteers and staff of the UWC organizations, was and continues to be used by SUWA to evaluate the eligibility of areas for wilderness designation and inclusion in ARRWA, including BLM land in Kane County bounded and traversed by the Sand Dunes Road. This survey and documentation work identifies how these lands in ARRWA merit protection and satisfy the requirements of the National Wilderness Preservation System (defined roughly as tracts of land 5,000 acres or more in size, possessing outstanding opportunities for solitude, and/or primitive and unconfined opportunities for recreation and an essentially undeveloped and

roadless condition). This work includes extensive photographs, maps, and narrative descriptions of these qualities as well as documentation of any faint human incursions in these areas. This information is maintained in the SUWA offices in Salt Lake City and Moab, Utah.

12. Additionally, from 2006-2012, I was an active member of the BLM's Utah Resource Advisory Council, a 15-member advisory panel appointed by the Secretary of Interior to provide advice and recommendations to the BLM on land use planning and management. Council members represent a cross section of public lands stakeholders including energy, tourism, and commercial recreation interests; environmental, archeological or historic interests; elected officials; and the public at large. The Council periodically conducted its meetings at various sites throughout the state, including areas where roads and ORV impacts had damaged the public lands and required more intensive regulation, and heard presentations about the resource impacts of such use. Based on that information, the Council would deliberate and make recommendations to the BLM about how to resolve various resource and management issues. Through this experience I gained expertise about the destructive impacts roads and ORV use can cause on a range of natural resources.

13. My current work involves, among other things, site visits to identify and document the characteristics of certain tracts of BLM lands to determine whether the areas qualify for wilderness protection or are suitable for other types of protection. I also frequently meet with BLM staff to gather information about the resources present on the land and to gather information relating to the impacts of various proposals for use of the land. I spend considerable time on the ground documenting intrusions such as roads, road maintenance and expansion, and off-road vehicle ("ORV") impacts on lands considered by the BLM and/or the UWC to have

wilderness characteristics and other important public land resources. I have expertise in map reading, route finding, and land navigation using both paper and electronic maps.

14.     With this information, I actively urge BLM to protect wilderness-quality and other sensitive lands from various impacts associated with roads and ORV use. I engage in advocacy work in connection with specific proposals for activities like road work (such as maintenance or improvements) or ORV events and trail proposals, as well as in connection with broader BLM planning efforts such as travel management and resource management plans ("RMPs").

15.     Through this work, I am very familiar with the federal public lands managed by the BLM Kanab Field Office and governed by the 2008 Kanab RMP. That plan governs which activities may take place in Kanab Field Office, along with where, when, and how they may take place. The RMP also included a travel plan which identifies certain unpaved routes where motorized vehicle use is permitted on BLM lands.[2] In the course of my work, I have become very familiar with this management plan and motorized travel designations, as well as the conditions of BLM lands within the Kanab Field Office. I have personally visited the federal

---

[2] SUWA filed suit over the Kanab RMP and the associated travel management plan (in addition to several other RMPs and their travel management plans) for violating federal environmental and historic preservation laws. That litigation was resolved in 2017 when SUWA, the United States Department of the Interior, and others reached a settlement agreement which directed that BLM would prepare 11 new travel management plans from 2017-2024, including for the Trail Canyon travel management area, which encompasses the Sand Dunes Road and the surrounding federal public lands in the Kanab Field Office. As of the date of this filing, BLM has not completed the Trail Canyon Travel Management Plan. Once complete, the Trail Canyon Travel Management Plan will supersede the route designations made in the Kanab RMP.

public lands immediately surrounding the Sand Dunes Road on numerous occasions, most recently in November 2025.

16. In addition to the management directives outlined in the Kanab RMP, the BLM lands adjacent to the Sand Dunes Road include two categories of wilderness-quality lands:

- The Moquith Mountain Wilderness Study Area ("WSA") – an area recognized by BLM in the 1980s as having wilderness values; and

- The Canaan Mountain and Parunuweap Canyon citizen-identified wilderness areas – lands inventoried and determined by SUWA and the UWC to have wilderness character. Citizen-identified wilderness areas are proposed for congressional wilderness designation in ARRWA.

While WSAs are protected by law and managed by BLM to protect their wilderness values, citizen-identified wilderness areas do not receive the same recognition and protection.

17. At the southern end, the Sand Dunes Road borders the Canaan Mountain citizen-identified wilderness area. As the road traverses northeast, it becomes adjacent to the Moquith Mountain WSA. At the junction with Highway 89, the Sand Dunes Road is adjacent to the Parunuweap citizen-identified wilderness area.

18. Currently, under the Kanab RMP, the Sand Dunes Road is a chip-sealed (not paved) road open to motorized vehicle use.

19. I enjoy hiking, camping, backpacking, scenic driving, viewing cultural resources (both prehistoric and historic), bird watching, studying, contemplating solitude, photography, and other activities on lands within the Kanab Field Office, and especially those proposed for wilderness designation in ARRWA.

20. During these activities, I have visited the Sand Dunes Road, as well as the wilderness-quality BLM lands adjacent to the road numerous times. I use and enjoy these areas for health, spiritual, educational, recreational, aesthetic, and other purposes. I most recently visited the Sand Dunes Road and the adjacent wilderness-quality lands in November 2025. I take great pleasure from my visits to this area and intend to return as often as possible, but certainly in the next year.

21. My enjoyment of these activities, and that of SUWA's members, is dependent on quiet, natural settings without the sights, sounds and impacts associated with paved roads and large vehicles. If the Sand Dunes Road is paved, widened beyond its current disturbed width, and/or otherwise improved to accommodate more frequent large vehicle traffic, the wilderness-quality public lands bordering the Sand Dunes Road will be degraded and my and SUWA's members' enjoyment of these areas will be significantly reduced or eliminated.

22. Given the Plaintiffs stated intent to pave and improve the Sand Dunes Road to accommodate large vehicle traffic, I believe a determination of title and scope of the Sand Dunes Road in the Plaintiffs' favor (or a Quiet Title Act disclaimer wherein the United States disclaims its interest in the road) will increase motorized use of the road and both encourage and result in illegal motorized use on adjacent lands. Such a determination and use will significantly degrade the solitude, quiet, and natural and cultural resources in the Canaan Mountain, Moquith Mountain, and Parunuweap areas. I have observed that once a road is paved (or improved from a chip-sealed, graveled, or dirt travel surface), traffic dramatically increases, thereby diminishing the area's primitive and wild character. I have also observed negative, indirect impacts from newly improved roads including the spread of weeds, collisions with wildlife, and vehicle noise.

All these effects detract from and degrade the natural beauty and wilderness character of the public lands.

23.     Further, a judicial determination granting Plaintiffs' title to the Sand Dunes Road, or a Quiet Title Act disclaimer disclaiming the United States' title to the road, would open the door to Plaintiffs undertaking road activities such as widening or rerouting the road and constructing appurtenances to the road. These activities could result in the intrusion and expansion of road-related impacts into areas which are proposed for wilderness designation and/or are currently protected as WSAs, causing unavoidable resource damage to the vegetation, soils, and other resources in newly disturbed areas. Such an agreement or determination would also dramatically impact the primitive, remote character of the surrounding lands, where public lands are characterized by the lack of roads, ORV use, and other impacts, and which I prize for their primitive nature.

Pursuant to 28 U.S.C. § 1746, I DECLARE, under penalty of perjury, that the foregoing is true and correct.

Signed this 19th day of November, 2025.

_____
Ray Bloxham