# EXHIBIT 3

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

| | |
|---|---|
| KANE COUNTY, UTAH, a Utah political subdivision, and STATE OF UTAH, | ) |
| | ) |
| Plaintiff-Appellants/Cross-Appellees, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) Case Nos. 13-4108 |
| | ) 13-4109 |
| Defendant-Appellee/Cross-Appellant, and | ) 13-4110 |
| | ) |
| SOUTHERN UTAH WILDERNESS ALLIANCE and THE WILDERNESS SOCIETY, | ) |
| | ) |
| Proposed Intervenor-Defendant-Appellees/ Cross-Appellants | ) |

_____

## MOTION OF THE SOUTHERN UTAH WILDERNESS ALLIANCE AND THE WILDERNESS SOCIETY TO INTERVENE ON APPEAL AS DEFENDANT-APPELLEES/CROSS-APPELLANTS

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), SOUTHERN UTAH

WILDERNESS ALLIANCE and THE WILDERNESS SOCIETY, through their

undersigned counsel, hereby disclose that they have no parent corporations, nor does any

publicly held corporation own 10% or more of their stock.

Respectfully submitted,

Dated: October 7, 2013         By:   /s/ Matthew S. Hellman
                                     Matthew S. Hellman
                                     Jerome L. Epstein
                                     Caroline M. DeCell

                                     JENNER & BLOCK LLP
                                     1099 New York Ave., N.W., Suite 900
                                     Washington, DC  20001
                                     Phone:  202-639-6000
                                     Fax:  202-639-6066
                                     mhellman@jenner.com
                                     jepstein@jenner.com
                                     cdecell@jenner.com

                                     Stephen H.M. Bloch
                                     David T. Garbett
                                     SOUTHERN UTAH WILDERNESS
                                     ALLIANCE
                                     425 East 100 South
                                     Salt Lake City, UT 84111
                                     Telephone:  (801) 486-3161
                                     Facsimile: (801) 486-4233
                                     steve@suwa.org
                                     david@suwa.org

                                     *Attorneys for Proposed Intervenor-*
                                     *Defendants-Appellees/Cross-Appellants*

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure, Proposed Intervenors the Southern Utah Wilderness Alliance and The Wilderness Society, by and through undersigned counsel, respectfully submit this Motion to Intervene as Defendant-Appellees/Cross-Appellants.

## RELIEF SOUGHT AND GROUNDS FOR MOTION

The Southern Utah Wilderness Alliance and The Wilderness Society (collectively, "SUWA" or "Proposed Intervenors") seek to intervene in this appeal as Defendant-Appellees/Cross-Appellants. SUWA satisfies the requirements for intervention as of right set forth in Rule 24(a) of the Federal Rules of Civil Procedure, which this Court has held applicable to motions for intervention on appeal. *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1102 (10th Cir. 2005). First, SUWA has cognizable interests in the property or transaction which is the subject of this action. Second, those interests would be impaired as a practical matter should SUWA not be permitted to intervene. Third, SUWA's interests may not be adequately represented by the existing parties to the litigation. And fourth, SUWA's motion for intervention is timely.

Pursuant to Circuit Rule 27.3(C) of the Tenth Circuit Rules, SUWA makes the following disclosures: Kane County and the State of Utah oppose this Motion. The United States is reserving its position pending review of the Motion.

## INTRODUCTION

This appeal follows one of approximately thirty cases brought before the United States District Court for the District of Utah by the State of Utah and a Utah political subdivision requesting declaratory relief that would establish their ownership of

approximately 36,000 miles of alleged "highways" pursuant to Revised Statute 2477 ("R.S. 2477"), Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (repealed 1976).

In this case, Kane County ("the County") and the State of Utah seek to quiet title to fifteen routes traversing federal public lands located within the County's borders. Several of these routes either cut through or border lands designated as wilderness study areas ("WSAs") or are lands managed under various federal plans, which SUWA has long fought to protect through judicial, administrative, and legislative advocacy. A decision recognizing the County's alleged R.S. 2477 rights-of-way along these routes would enable their transformation from dirt roads, some narrow and barely passable, into two-lane paved highways measuring sixty-six feet across. Any such decision would irreparably destroy parts of Utah's pristine landscape and dramatically change quiet, primitive, and remote federal lands into noisy and polluted highways, to the detriment of SUWA's longstanding and repeatedly recognized interests in conservation.

As this Court has previously concluded, these interests indisputably qualify as legally protectable interests for purposes of intervention as of right. Any decision recognizing the County's R.S. 2477 claims would impair SUWA's ability to advocate for the wilderness-character lands at issue and protect them from motor vehicle use and road construction. *See San Juan Cnty. v. United States*, 503 F.3d 1163, 1199, 1201 (10th Cir. 2007) (en banc). In order to protect its interests from such impairment, SUWA seeks the right to intervene in support of the United States in this appeal.

SUWA's intervention is necessary because the United States may not adequately represent SUWA's interests in protecting these lands from development and the vehicular

traffic likely to attend such development. For this reason, SUWA timely moved to intervene in the district court proceedings below. The district court denied its motion, and this Court affirmed solely on the ground that SUWA had "failed to establish, at [that] stage of the litigation, that the federal government will not adequately protect its interest." *Kane Cnty. v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010). The Court explained that "the federal government 'ha[d] displayed no reluctance [in these proceedings], at least so far as the record before [it] show[ed], to claim full title to' the roads at issue, and 'SUWA ha[d] provided no basis to predict that the [federal government] will fail to present ... an argument on the merits that SUWA would make." *Id.* (quoting *San Juan Cnty.*, 503 F.3d at 1206 (opinion of Hartz, J.)).

Subsequent case developments, however, have proved both assumptions incorrect. In the first place, the United States abandoned a key jurisdictional argument regarding the applicable statute of limitations — an argument SUWA was left to make as an amicus, post-trial. The United States has not confirmed whether it will adopt this argument on appeal, but its concession below suggests it is highly unlikely to do so as to most or all of the claimed routes.[1] Moreover, the United States ultimately not only contended that it had never challenged title to some of the roads at issue, but it affirmatively *conceded* that it lacked title to a subset of those roads. Thus, at least at *this* stage of the litigation, the United States has "displayed … reluctance … to claim full title to the roads at issue," and

---

[1] Even if the United States were to make this argument on appeal for a particular route, SUWA would still seek to ensure the issue is given the attention it is due and as to all applicable routes. And in any case, as discussed below, SUWA need only show that the United States "may" not adequately represent its interests.

there is sound reason "to predict" that it "will fail to present … an argument on the merits that SUWA would make." *Id.* (internal quotation marks omitted). The Court should therefore acknowledge the possible inadequacy of the United States' representation of SUWA's interests and SUWA's resulting right to represent its own interests as an intervenor in this appeal to present the jurisdictional limitations issue that the United States ultimately chose not to press in the lower court.[2]

## BACKGROUND

The Southern Utah Wilderness Alliance is a non-profit corporation with thousands of members throughout the United States, many of whom live and recreate in Utah. The Southern Utah Wilderness Alliance is dedicated to preserving the outstanding wilderness and other sensitive public lands at the heart of the Colorado Plateau, as well as encouraging management and preservation of those lands in their natural state. *See* Mot. to Intervene & Mem. in Supp. Ex. 1 ¶ 3 (Decl. Ray Bloxham), *Kane Cnty. v. United States*, No. 2:08-cv-00315-CW (D. Utah Nov. 26, 2008), ECF No. 31-2 [hereinafter Bloxham Decl.]. It has undertaken many efforts to protect the lands at issue in this litigation, such as: aiding the Utah Wilderness Coalition in its efforts to pass America's Red Rock Wilderness Act, which would designate as wilderness approximately nine million acres of Utah lands managed by the U.S. Bureau of Land Management ("BLM lands"), including several of the areas bordering or containing the alleged R.S. 2477 rights-of-way at issue here, *id.* ¶ 7; and working for over a decade to eliminate damage

---

[2] If granted intervenor status, SUWA would focus on the limitations issue, but it reserves the right to address other issues such as whether permissive use can satisfy the requirements of R.S. 2477.

from motor vehicle use in Kane County, *see* Mot. to Intervene & Mem. in Supp. Ex. 2 ¶¶ 5–7, 12 (Decl. Liz Thomas), *Kane Cnty.*, ECF No. 31-2 [hereinafter Thomas Decl.]. Furthermore, Southern Utah Wilderness Alliance members and staff use and enjoy BLM lands in Kane County for a variety of purposes, including scientific study, recreation, and aesthetic appreciation. Bloxham Decl. ¶¶ 7, 8, 13; Thomas Decl. ¶¶ 14–17.

The Wilderness Society ("TWS") is a non-profit national membership organization founded in 1935. Through public education and advocacy, TWS works to protect America's wilderness and to develop a nationwide network of wild lands. Mot. to Intervene & Mem. in Supp. Ex. 3 ¶¶ 4–6 (Decl. Suzanne Jones), *Kane Cnty.*, ECF No. 31-3 [hereinafter Jones Decl.]. TWS plays an active role in the conservation community's efforts to protect Utah's remaining wilderness character lands. *Id.* ¶¶ 6–12, 14–20. It also conducts public education campaigns about the value of America's remaining wild lands, the threats to those lands, and the public's opportunity to take part in the management decisions by the BLM and others that will decide the fate of those lands. *Id.* ¶ 6.

The County brought the action on appeal under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, seeking judicial recognition of its title to fifteen routes traversing or bordering BLM lands in southern Utah. The County's claim under the QTA is based on R.S. 2477, which states simply: "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Act of July 26, 1866, § 8, 14 Stat. 251, 253 (later codified at 43 U.S.C. § 932 (1970)). Congress repealed R.S. 2477 in 1976 with the enactment of the Federal Land Policy and Management Act of 1976

("FLPMA"), Pub. L. No. 94-579, 90 Stat. 2743.  Under FLPMA, only perfected R.S. 2477 rights-of-way in existence on the date of R.S. 2477's repeal remain valid.  *See* 43 U.S.C. § 1769.

The holder of a right-of-way over BLM lands has rights to use, maintain, and move or reposition the right-of-way.  *See, e.g.*, *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 746 (10th Cir. 2005).  In a 1993 report to Congress, the U.S. Department of the Interior ("DOI") acknowledged the potentially damaging impacts that recognition of R.S. 2477 rights-of-way could have on public resources and land management.  U.S. Dep't of the Interior, *Report to Congress on R.S. 2477* (June 1993) [hereinafter DOI Report].[3]  DOI noted that "[r]ecognition and use of R.S. 2477 rights-of-way could interfere with and prevent effective management of the individual and common objectives of the affected [land management] agencies."  *Id.* at 35.  DOI further concluded that "road-widening may directly impact natural resources contiguous to the right-of-way."  *Id.*  The report stated that these concerns are heightened when wilderness values are impacted by R.S. 2477 right-of-way claims.  *Id.* at 38.

The R.S. 2477 rights-of-way the County claims in this QTA action traverse or border three categories of federal public lands in which SUWA has a particular interest: (1) WSAs, or roadless lands recognized by BLM as providing "outstanding opportunities for solitude or a primitive and unconfined type of recreation," 16 U.S.C. § 1131(c); *see* 43 U.S.C. § 1782; (2) lands proposed for wilderness designation in America's Red Rock

---

[3] *Available at* http://ia600809.us.archive.org/8/items/reporttocongress8278unit/ reporttocongress8278unit.pdf.

Wilderness Act by the Utah Wilderness Coalition; and (3) lands designated as part of the Grand Staircase-Escalante National Monument, *see* Establishment of the Grand Staircase-Escalante National Monument, 61 Fed. Reg. 50,223 (Sept. 18, 1996), especially those closed to motor vehicles by a 1999 Management Plan, *see* Grand Staircase-Escalante National Monument Approved Management Plan and Record of Decision, 65 Fed. Reg. 10,819 (Feb. 29, 2000).

To defend its interests in these lands against the County's claimed R.S. 2477 rights-of-way, SUWA moved to intervene in the district court. *See Kane Cnty. v. United States*, No. 2:08–CV–315, 2009 WL 959804 (D. Utah Apr. 6, 2009). The district court denied SUWA's motion, *id.*, and this Court affirmed, *Kane Cnty.*, 597 F.3d 1129. Consistent with the majority conclusion in *San Juan County*, this Court assumed that SUWA had a valid interest that may be impaired by the disposition of the County's claims; nonetheless, it held that SUWA had "failed to establish, at [that] stage of the litigation, that the federal government will not adequately protect its interest." *Kane Cnty.*, 597 F.3d at 1135. The Court noted that, "as was the case in *San Juan County*, the federal government 'ha[d] displayed no reluctance [in these proceedings], at least so far as the record before [it] show[ed], to claim full title to' the roads at issue, and 'SUWA ha[d] provided no basis to predict that the [federal government] will fail to present ... an argument on the merits that SUWA would make." *Id.* (quoting *San Juan Cnty.*, 503 F.3d at 1206) (second and sixth alterations and ellipsis in original).

In the meantime, the United States moved to dismiss as to some of the County's claimed rights-of-way. Insisting that it had never disputed or interfered with many of

those putative rights-of-way, the United States contended that there was no case or controversy as required for Article III jurisdiction for those routes, nor a "disputed title to real property" as required for suit under the QTA. The district court denied the motion, finding the County's title to the rights-of-way sufficiently clouded by the United States' actions. *See Kane Cnty. v. United States*, No. 2:08-cv-00315, -- F. Supp. 2d --, 2013 WL 1180387, at *14–15 (D. Utah Mar. 20, 2013). The district court subsequently granted partial summary judgment to the County with regard to several of its claimed rights-of-way. *See Kane Cnty. v. United States*, No. 2:08-cv-00315, 2011 WL 2489819 (D. Utah June 21, 2011).

In its memorandum decision, the district court stated that the United States concurred with the County that its action was not barred by the twelve-year statute of limitations contained in the QTA, 28 U.S.C. § 2409(g). *Id.* at 16; *see also* Final Pretrial Order at 26, *Kane Cnty.*, No. 2:08-cv-00315-CW (D. Utah Aug. 16, 2011), ECF No. 174. Following a bench trial addressing the remaining rights-of-way at issue, as well as their scope, SUWA filed an amicus brief arguing, *inter alia*, that the County's claims were barred by the QTA's statute of limitations. Noting that the United States had abandoned this argument, the district court concluded that the County's claims were not barred by the statute of limitations. *See Kane Cnty.*, 2013 WL 1180387, at *19. The district court simultaneously issued a decision recognizing all but a handful of plaintiffs' claimed R.S. 2477 rights-of-way, *Kane Cnty. v. United States*, No. 2:08-cv-00315, 2013 WL 1180764 (D. Utah Mar. 20, 2013), followed by a Final Order Quieting Title on May 30, 2013. The United States and County timely filed notices of appeal in this Court.

8

### LEGAL STANDARD FOR INTERVENTION AS OF RIGHT ON APPEAL

Federal Rule of Civil Procedure 24(a) governs intervention as a matter of right in the district court.  Although no equivalent rule expressly governs intervention on appeal, the Supreme Court has recognized that "the policies underlying intervention may be applicable in appellate courts."  *UAW Local 238 v. Scofield*, 382 U.S. 205, 217 n.10 (1965).  "Accordingly, a party seeking intervention on appeal must satisfy the prerequisites of Rule 24(a)."  *Elliott Indus.*, 407 F.3d at 1102.  Under that rule, a party is entitled to intervene if:

> (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties."

*Coalition of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior* ("*Coalition of Cntys.*"), 100 F.3d 837, 840 (10th Cir. 1996).

These standards "are not rigid, technical requirements"; rather, they are simply "intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation."  *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quoting *San Juan Cnty.*, 503 F.3d at 1195) (internal quotation marks omitted).  For this reason, "[t]he Tenth Circuit generally follows a liberal view in allowing intervention under Rule 24(a)."  *Elliott*, 407 F.3d at 1103.[4]  Moreover, "in cases raising significant public interests," such as this one, "the

---

[4] Where an applicant failed to seek intervention below, the Court will permit intervention on appeal "'only in an exceptional case for imperative reasons.'"  *Elliott*, 407 F.3d at

requirements for intervention may be relaxed." *San Juan Cnty.*, 503 F.3d at 1201 (suggesting that SUWA's environmental interests in the lands to which the county and state sought to quiet title qualified as "significant public interests").

## ARGUMENT

SUWA plainly meets the liberal requirements of Rule 24(a) and is thus entitled to intervene in this appeal. In *San Juan County*, a majority of the Tenth Circuit sitting en banc concluded that SUWA has legally protectable interests relating to an alleged R.S. 2477 right-of-way similar to those at issue here, and that SUWA's interests may be impaired by a disposition recognizing that alleged right-of-way in a QTA action such as this one. *See* 503 F.3d at 1199, 1201. The interests SUWA claimed in *San Juan County* are identical to those SUWA claims here, and the threat of impairment the Court recognized in *San Juan County* is identical to the threat of impairment here. Consequently, the only open question for the Court to resolve on this Motion is whether the United States may not adequately represent SUWA's interests at this stage of the litigation. By asserting the lack of any case or controversy over title to certain of the

---

1103 (quoting authority). Here, SUWA not only moved to intervene in the district court proceedings below, but also timely appealed the district court's denial of its motion. *See Kane Cnty.*, 597 F.3d at 1132–33; *cf. Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000) (denying intervention on appeal where one applicant failed timely to appeal the district court's denial of her motion to intervene and another set of applicants never moved to intervene in the district court in the first place). Therefore, the heightened intervention standard does not apply. In any case, as discussed below, this Court has recognized that where, as here, an intervenor seeks to present an argument that goes to this Court's jurisdiction, it satisfies the imperative standard. *Elliott*, 407 F.3d at 1103. Moreover, the fact that the two assumptions underlying the Tenth Circuit's prior decision regarding SUWA's intervention in this litigation — assumptions that the United States would fully defend title and would make any arguments on the merits SUWA would make — have since proved faulty makes this an exceptional case.

roads at issue — and subsequently conceding title to a subset thereof — the United States "ha[s] displayed ... reluctance ... to claim full title to" those roads. *Kane Cnty.*, 597 F.3d at 1135 (quoting *San Juan Cnty.*, 503 F.3d at 1206 (opinion of Hartz, J.)). And in view of its concession below, there is sound reason "to predict" that the United States "will fail to present ... argument[s] on the merits that SUWA would make" in this appeal. *Id.* (quotation marks omitted). Therefore, the Court should acknowledge the possible inadequacy of the United States' representation of SUWA's interests and afford SUWA the opportunity to represent its own interests as an intervenor in this appeal.

## I.   SUWA's Interests In The Lands At Issue Support Intervention As Of Right.

An applicant for intervention must establish "an interest relating to the property ... which is the subject of the action." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (quoting Fed. R. Civ. P. 24(a)(2)). This requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *San Juan Cnty.*, 503 F.3d at 1195 (quoting *Coalition of Cntys.*, 100 F.3d at 841). Accordingly, the applicant need not claim a legal interest in the disputed property itself; rather, it need only claim an interest *relating* to that property. *See* 255 F.3d at 1252; *San Juan Cnty.*, 503 F.3d at 1200. SUWA's interests clearly relate to the property at issue in the County's action.

The Tenth Circuit, along with other circuits, has acknowledged that "organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens those goals." *Utah Ass'n of Cntys.*, 255

F.3d at 1252 (citing cases). Consistent with this view, in *San Juan County* the Court declared "it indisputable that SUWA's environmental concern is a legally protectable interest." 503 F.3d at 1199; *see also WildEarth Guardians*, 604 F.3d at 1198. In reaching this conclusion, the Court noted that SUWA members regularly visited the property at issue "for conservation, aesthetic, scientific and recreational purposes"; that SUWA "ha[d] been a determined advocate for restricting vehicular access to" the land at issue; and that SUWA's prior advocacy had played a role in the protection the land enjoyed at that time. 503 F.3d at 1199. The Court further noted that SUWA did not claim title to the right-of-way at issue, but it found this fact immaterial, as Rule 24(a)(2) required only that SUWA claim an interest *relating to* that property. *Id.* at 1200–01.

SUWA's environmental concern is the same here as it was in *San Juan County*: "the potential damage to the environment arising from vehicular traffic" in the BLM lands surrounding the County's claimed rights-of-way. *San Juan Cnty.*, 503 F.3d at 1199. Similar efforts on the part of SUWA and its members substantiate this concern. SUWA's members regularly visit the BLM lands surrounding the County's claimed rights-of-way for aesthetic, scientific, and recreational purposes. *See, e.g.*, Bloxham Decl. ¶¶ 7, 8, 13; Thomas Decl. ¶¶ 14–17. And for years SUWA has actively advocated for federal and other protections for these lands. *See, e.g.*, Bloxham Decl. ¶ 3; Thomas Decl. ¶¶ 5–7, 12; *see also Kane Cnty. v. Kempthorne*, 495 F. Supp. 2d 1143 (D. Utah 2007) (following SUWA's successful intervention, upholding BLM's authority to issue Monument Plan against County's challenge); *Utah Ass'n of Cntys.*, 255 F.3d at 1248 (reversing denial of SUWA's motion to intervene to defend President Clinton's

12

establishment of the Grand Staircase-Escalante National Monument).  As in *San Juan County*, therefore, SUWA's interests relating to the County's claimed R.S. 2477 rights-of-way over these lands support its intervention as of right.

## II.     Recognition Of The County's Alleged R.S. 2477 Rights-Of-Way Would Impair SUWA's Interests.

To intervene as of right, SUWA must also "demonstrate that the disposition of this action may as a practical matter impair or impede [its] ability to protect [its] interest." *Utah Ass'n of Cntys.*, 255 F.3d at 1253.  Yet "a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied."  *Id.* (emphasis added).   For the following reasons, SUWA meets this requirement for intervention as well.

Recognition of the County's claimed R.S. 2477 rights-of-way could result in the opening of a closed route to vehicle use and the expansion of other routes into highways measuring sixty-six feet across, *see* Am. Compl. ¶¶ 14–16, 113, 120, 192, 225, 252, 259, *Kane Cnty.*, No. 2:08-cv-00315-CW (D. Utah Nov. 10, 2008), ECF No. 24, which could irreparably impair SUWA's conservation interests in at least two significant ways.  First, it could invite increased traffic and encourage illegal off-route vehicle use, which would degrade the surrounding wilderness, wildlife, and other resources that SUWA has long fought to protect.  *See, e.g.*, DOI Report at 35, 38.  Second, it could impede SUWA's ability to secure from Congress wilderness protection of the surrounding lands.  The BLM manages wilderness study areas in part to protect their roadless nature; by introducing a two-lane highway in these areas, the County could undermine the

management goals SUWA has already achieved, as well as those it continues to strive for through the passage of America's Red Rock Wilderness Act.  *See* Bloxham Decl. ¶ 7; *Utah v. United States*, No. 05-cv-714, 2008 WL 4170017, at *4 (D. Utah Sept. 3, 2008) ("A ruling on the merits favoring plaintiffs … would change the land management ability of the federal agency as to those routes, and may reduce the chance that the federal land would retain its wilderness characteristics.").

Indeed, this Court has already acknowledged the possibility that SUWA's interests would be impaired by recognition of a county's claimed R.S. 2477 rights-of-way in a QTA action.  As the Court explained in *San Juan County*:  "The quiet-title claim may well affect vehicular traffic on the road.  In particular, it cannot be doubted that if the County prevails, it will then pursue opening the road to vehicular traffic that SUWA has been trying to prevent."  *San Juan Cnty.*, 503 F.3d at 1200.  The opening of previously closed routes, such as the North Swag route, to vehicle use is in itself sufficient impairment to support intervention here.  *See id.* at 1200–01.

Moreover, an appellate decision affirming recognition of the County's claimed R.S. 2477 rights-of-way could impair SUWA's interests not only in this case, but also in others.  This Court has held that "the *stare decisis* effect of [a] district court's judgment is sufficient impairment for intervention under Rule 24(a)(2)."  *Utah Ass'n of Cntys.*, 255 F.3d at 1254; *accord WildEarth Guardians*, 604 F.3d at 1199; *San Juan Cnty.*, 503 F.3d at 1198.  Surely, then, the binding precedential effect of an appellate decision is sufficient impairment for intervention, too.  As noted above, this case is but one of many involving claimed R.S. 2477 rights-of-way through wilderness-character lands in Utah.  An adverse

determination from this Court could thus impair SUWA's conservation interests throughout the state. SUWA thus "is so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest." 503 F.3d at 1201.

### III. The United States May Not Adequately Represent SUWA's Interests.

Once possible impairment of an interest relating to the property at issue in the case is established, an applicant is entitled to intervene on a timely motion "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The inadequate representation requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see WildEarth Guardians*, 604 F.3d at 1200. To satisfy this minimal burden, "[t]he possibility that the interests of the applicant and the parties may diverge 'need not be great.'" *Utah Ass'n of Cntys.*, 255 F.3d at 1254 (quoting authority). The possibility of divergence between SUWA's and the United States' interests here satisfies this burden.

When SUWA sought to intervene in the district court, its motion was denied partly on the ground that SUWA did not satisfy this factor. On appeal from that denial, this Court affirmed solely on that ground, noting that "'SUWA ha[d] provided no basis to predict that the [federal government] will fail to present ... an argument on the merits that SUWA would make" and that "the federal government 'ha[d] displayed no reluctance [in these proceedings], at least so far as the record before [it] show[ed], to claim full title to' the roads at issue." *Kane Cnty.*, 597 F.3d at 1135 (quoting *San Juan Cnty.*, 503 F.3d at 1206). *Both* of these factors are now satisfied.

15

*First*, the United States has now abandoned a jurisdictional limitations argument that SUWA would make.  In its answer, the United States raised the argument that the County's claims were barred by the QTA's twelve-year statute of limitations.  *See Kane Cnty.*, 2013 WL 1180387, at \*19.  Later, however, the United States conceded this argument, choosing to pursue jurisdictional arguments based on the assertion that the United States had never contested the County's title to certain of the rights-of-way at issue.  *See Kane Cnty.*, 2013 WL 1180387, at \*11, \*14.  The district court noted the United States' concession on at least three separate occasions.  *See Kane Cnty.*, 2013 WL 1180387, at \*2, \*19; Final Pretrial Order, *supra* page 8; *Kane Cnty.*, 2011 WL 2489819, at \*7.  Following this concession, the court addressed the limitations argument only because SUWA raised it in an amicus brief filed post-trial.  *See Kane Cnty.*, 2013 WL 1180387, at \*2.

The United States' concession of this argument is particularly significant given that, unlike under most statutes of limitations, an untimely claim acts as a bar to the court's jurisdiction under the QTA.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 599 F.3d 1165, 1175–76 (10th Cir. 2010).  In *Elliott Industries*, this Court granted intervention to applicants who sought solely to address the court's jurisdiction, explaining:  "The issue of subject matter jurisdiction is essential to this court's review and while we would address it without regard to whether the parties dispute its existence, our inquiry is aided by the presence of an interested party like [applicant]."  407 F.3d at 1104.  Indeed, there the Court granted intervention on appeal notwithstanding the applicants' failure to seek intervention below, finding their aid in addressing the question

of jurisdiction an "imperative reason to justify intervention." *Id.* As a deeply interested would-be party, SUWA is prepared to explain to how the County's claims fall outside the QTA's statute of limitations.[5] Thus, although SUWA need not satisfy an exceptional standard to intervene, *supra* note 4, the jurisdictional implications of SUWA's argument make this, like *Elliott*, an "exceptional case." *See Elliott Indus.*, 407 F.3d at 1103–04.

*Second*, the United States has also failed "to claim full title to" the roads at issue. In its motion to dismiss, the United States contended that there was no case or controversy under Article III, nor a "disputed title to real property" under the QTA, because it had never disputed or interfered with the County's use of them. *See Kane Cnty.*, No. 2:08-cv-00315-CW (D. Utah Dec. 5, 2008), ECF No. 35. Indeed, later in the proceedings, the United States stated that as to some of those rights-of-way, it was not just contending that it had not previously disputed title, but was *affirmatively conceding* that it lacked title. *Kane Cnty.*, 2013 WL 1180764, at *3. Thus, this is now a clear case in which the United States has failed "to claim full title to" all the roads at issue.

At a minimum, these subsequent case developments demonstrate that the United States' representation of SUWA's interests on appeal "'may be' inadequate." *Trbovich,* 404 U.S. at 538 n.10. The United States' decisions to abandon the statute of limitations

---

[5] That provision bars "[a]ny civil action under" the QTA "unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g). Further, it states that "[s]uch action shall be deemed to have accrued on the date the plaintiff … knew or should have known of the claim of the United States." *Id.* This is a light trigger. As this Court recently explained, "a range war isn't necessary to start the [QTA's] limitations clock." *George v. United States*, 672 F.3d 942, 946 (10th Cir. 2012). Rather, "by its plain terms the QTA is triggered by the government's *claim* — by its *assertion* of 'some interest adverse' to the plaintiff." *Id.* (quoting authority)). The United States took sufficient action to trigger the limitations period at least twice, in 1980 and 1991.

argument and to concede title to some of the rights-of-way claimed by the County reveal a clear divergence between its litigation objectives, as well as its interests, and SUWA's. *See Kane Cnty.*, 2013 WL 1180387, at *11, *14.  In contrast, SUWA challenged the County's title to all of the rights-of-way at issue.  Amicus Br. of SUWA 14–15, *Kane Cnty.*, No. 2:08-cv-00315-CW (D. Utah Dec. 30, 2011), ECF No. 215.  These conflicting litigation objectives do not merely suggest potential divergence — they confirm it.

Moreover, even where the proposed intervenor and the government share a single objective, the Tenth Circuit has recognized that the government may not adequately represent a proposed intervenor's interests.  In general, a court will presume a proposed intervenor's interest is adequately represented if the proposed intervenor shares an identical litigation objective with one of the parties.  *See City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042–43 (10th Cir. 1996).  Yet the Tenth Circuit has declined to apply this presumption when the only party to share the private litigator's objective is the government, recognizing that the government must consider a host of issues beyond the focus of a potential intervenor's concerns.  *See, e.g.*, *WildEarth Guardians*, 604 F.3d at 1200 (this Court has "repeatedly recognized that it is 'on its face impossible' for a government agency to carry the task of protecting the public's interests and the private interests of a … intervenor." (quoting *Utahns*, 295 F.3d at 1117)).

To be sure, three members of the en banc panel in *San Juan County* asserted that "[t]his presumption should apply when the government is a party pursuing a single objective."  *San Juan Cnty.*, 503 F.3d at 1204.  Finding that SUWA shared a single objective with the government in that case – "defending exclusive title to the road," an

18

objective the government has not demonstrated here – those judges applied the presumption and concluded, based "on the record before [them]," that SUWA had failed to rebut it.  *Id.* at 1206.[6]  Those judges noted, however, "that this denial [did] not forever foreclose SUWA from intervention" and found that the matter could be "revisited" in the event of changed circumstances.  *Id.* at 1207.

Thus, even if there were a presumption of adequate representation, it would now be rebutted by the concrete evidence of divergence: the United States' "reluctance … to claim full title to the roads at issue" and its "fail[ure] to present ... an argument on the merits that SUWA would make."  *Kane Cnty.*, 597 F.3d at 1135 (quoting *San Juan Cnty.*, 503 F.3d at 1206).  This evidence surpasses the minimal showing of divergence the Court has held sufficient to defeat any presumption of adequate representation.  *See Utah Ass'n of Cntys.*, 255 F.3d at 1254–56; *Coalition of Cntys.*, 100 F.3d at 844–45 ("possibility of divergence of interest need not be great" to overcome the presumption).

## IV.    SUWA's Motion For Intervention Is Timely.

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."  *Elliott Indus.*, 407 F.3d at 1103 (quoting authority).  This requirement "is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner."

---

[6] Because that portion of the opinion was joined by only three members of the en banc majority, it is not controlling.  *See, e.g.*, *Kane Cnty.*, 597 F.3d at 1134.

*Utah Ass'n of Cntys.*, 255 F.3d at 1250 (quotation marks and citation omitted). Accordingly, "courts should allow intervention where no one would be hurt and greater justice could be attained." *Id.* (internal quotation marks omitted). Under this standard, SUWA's motion is timely.

No existing party will be prejudiced by SUWA's intervention. SUWA is filing this Motion in advance of their briefing deadlines and agrees to abide by the established briefing schedule. Both parties would have ample time to consider and respond to any arguments SUWA might raise, and thus would not be prejudiced. *See Utah Ass'n of Cntys.*, 255 F.3d at 1250–51. Even if an existing party did assert prejudice, it would be "minimal compared with the importance of addressing the question of subject matter jurisdiction." *Elliott Indus.*, 407 F.3d at 1103–04.

## CONCLUSION

For the reasons set forth above, Proposed Intervenors respectfully request that this Court enter an order granting them intervention as of right as Defendant-Appellees/Cross-Appellants in this action.

Respectfully submitted,

Dated: October 7, 2013          By:  /s/ Matthew S. Hellman
                                    Matthew S. Hellman
                                    Jerome L. Epstein
                                    Caroline M. DeCell

                                    JENNER & BLOCK LLP
                                    1099 New York Ave., N.W., Suite 900
                                    Washington, DC  20001

Phone:  202-639-6000
Fax:  202-639-6066
mhellman@jenner.com
jepstein@jenner.com
cdecell@jenner.com

Stephen H.M. Bloch
David T. Garbett
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone:  (801) 486-3161
Facsimile: (801) 486-4233
steve@suwa.org
david@suwa.org

*Attorneys for Proposed Intervenor-*
*Defendants-Appellees/Cross-Appellants*

21

## CERTIFICATE OF SERVICE

        I hereby certify that on October 7, 2013 I electronically filed the foregoing **MOTION TO INTERVENE ON APPEAL AS DEFENDANT-APPELLEES/ CROSS-APPELLANTS** using the Court's CM/ECF system, and that parties represented by counsel who are registered with the CM/ECF System will be served through that system.  In addition, I served by first class mail the following counsel:

      Ryan R. Jibson
      Holland & Hart
      222 South Main Street
      Suite 2200
      Salt Lake City, UT 84101
      rrjibson@hollandhart.com

      Joanna K. Brinkman
      United States Department of Justice
      Environment & Natural Resources Division
      P.O. Box 663
      Washington, DC 20044-0663
      joanna.brinkman@usdoj.gov

      Thomas K. Snodgrass
      United States Department of Justice
      Environment and Natural Resources Division
      1961 Stout Street, 8th Floor
      Denver, CO 80294
      thomas.snodgrass@usdoj.gov

Dated:  October 7, 2013      By:  _/s/  Matthew S. Hellman_____
                          Matthew S. Hellman

                           JENNER & BLOCK LLP
                           1099 New York Ave., N.W., Suite 900
                           Washington, DC  20001
                           Phone:  202-639-6000
                           Fax:  202-639-6066
                           mhellman@jenner.com

                           *Attorney for Proposed Intervenor-Defendants-Appellees/Cross-Appellants*

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing **MOTION TO INTERVENE ON APPEAL AS DEFENDANT-APPELLEES/CROSS-APPELLANTS**:

1. all required privacy redactions have been made per 10th Cir. R. 25.5;

2. if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3. the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Malwarebytes' Anti-Malware 1.51.2.1300, database version  912120410, and according to the program are free of viruses.


Dated:  October 7, 2013         By:  /s/  Matthew S. Hellman
                                     Matthew S. Hellman

                                     JENNER & BLOCK LLP
                                     1099 New York Ave., N.W., Suite 900
                                     Washington, DC  20001
                                     Phone:  202-639-6000
                                     Fax:  202-639-6066
                                     mhellman@jenner.com

                                     *Attorney for Proposed Intervenor-*
                                     *Defendants-Appellees/Cross-Appellants*